```
                                                                                    O
```

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| MICKY DAHL, | ) | CASE NO. ED CV 10-01122 RZ |
| Plaintiff, | ) | |
| vs. | ) | MEMORANDUM OPINION AND ORDER |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) | |
| Defendant. | ) | |

Plaintiff Micky Anne Dahl makes two arguments in support of her Complaint that the Social Security Commissioner wrongly denied her claim for disability benefits. She argues first that the jobs for which she was found capable do not match her residual functional capacity. She argues second that the Administrative Law Judge wrongly rejected certain medical opinion. The Court discusses these arguments below.

Relying on testimony from the vocational expert, the Administrative Law Judge concluded that there were sufficient jobs in the economy that Plaintiff could perform. Among these were the jobs of mail order clerk, library page, and linen room attendant. [AR 17] Plaintiff says in her first argument that the mail order clerk and linen room attendant jobs require a reasoning level of three on the Labor Department's scale, as found in the DICTIONARY OF OCCUPATIONAL TITLES, and that this is inconsistent with the finding that her residual functional capacity limits her to work with "simple, repetitive tasks." [AR

11] Plaintiff also says that the job of library page, while not demanding a level-three reasoning capability, nevertheless conflicts with her residual functional capacity, because the Administrative Law Judge found that she had to have a job where she had no public contact. The Court disagrees with both assertions.

Starting with the library page position, there is nothing in the record that indicates that this is a position that requires public contact as part of the job itself. It is, of course, possible that a person shelving or retrieving books or magazines from the library stacks might be asked a question by a member of the public, but that is not the essence of the job as defined in the DICTIONARY OF OCCUPATIONAL TITLES. Rather, the function of the job is retrieval and replacement of materials, a job that does not itself demand public interaction in order to be performed. There was nothing in the nature of Plaintiff's impairment that proscribed all communication with a member of the public, even if such communication was incidental and perfunctory.

The other two positions require level-three reasoning which, according to the Labor Department, requires a person to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form [and to d]eal with problems involving several concrete variables in or from standardized situations." DICTIONARY OF OCCUPATIONAL TITLES at Appx. C III. A vocational expert must give reasons for deviating from the definitions in the DICTIONARY, *see Massachi v. Astrue*, 486 F.3d 1149, 1152-53 (9th Cir. 2007), but there is no reason to believe that the expert here did in fact deviate. Simple, repetitive tasks are not necessarily inconsistent with level-three reasoning; the Labor Department's reference to dealing with standardized situations — situations that are materially the same every time — merges easily with the limitation to repetitive tasks. It is hard to conceive of the jobs of mail order clerk and linen room attendant as demanding a reasoning level exceeding Plaintiff's capacity. *See Renfrow v. Astrue*, 496 F.3d 918, 921 (8th Cir. 2007); *but see Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005). In short, there is no reversible error with respect to the jobs identified for which Plaintiff is capable.

A different situation exists with respect to the medical assessment. While a treating physician's opinion is owed deference, *Aukland v. Massanari*, 257 F.3d 1033, 1036 (9th Cir. 2001), it is not inviolate. Plaintiff's treating physician A. Salvan, M.D. filled out a form giving his opinion on Plaintiff's inability to work, but the form was thin, not backed by the medical records the doctor submitted, many of which dealt with physical, not mental, difficulties. [*E.g.*, AR 212-18 ] This lack of strong record support could be a legitimate basis upon which an administrative law judge could conclude that the opinion is not entitled to as much deference as usual. *Batson v. Commissioner of Social Security Administration*, 359 F.3d 1190 (9th 2004). Had the rejection of Dr. Salvan's opinion been the only issue, then the Court might have been willing to affirm on this record.

Plaintiff also complains, however, that the Administrative Law Judge ignored the opinion of Dr. Ecklund, another physician who treated Plaintiff. Defendant points out that the Administrative Law Judge addressed the very document that Plaintiff accuses her of ignoring. [AR 14] The problem is that in addressing Dr. Ecklund's assessment, the Administrative Law Judge was wrong. The Administrative Law Judge stated as follows:

> Specifically, on June 11, 2008, the claimant was rated "within normal limits" on her mental status examination, even though she was given a Global Assessment of Functioning ("GAF") score range of 45 to 50 (Ex. B14F, p. 11).

[AR 14-15 (fn. omitted)] On the cited exhibit, however, there was no overall rating of Plaintiff on the Mental Status portion of the examination, and so Plaintiff was not rated as "within normal limits" insofar as her mental status was concerned. In some sub-categories of the Mental Status category — Appearance/Hygiene; Behavior; Perceptual Process; and Thought Content — Plaintiff was in fact evaluated as being "Within Normal Limits." However, the assessment was different in other sub-categories. In "Thought Process," she was evaluated as "Tangential," and "Circumstantial," as opposed to "Within Normal

Limits;" her speech was assessed at "Other: talkative," as opposed to "Within Normal Limits;" and, most importantly here, in the category "Mood/Affect," instead of being evaluated as being "Within Normal Limits," Plaintiff was assessed as Depressed, Anxious, and Tearful. This assessment is consistent with the diagnosis she was given of "Major depression recurrent," and a panic disorder, with bipolar disorder and learning disorders to be ruled out. And, contrary to the Administrative Law Judge's statement that the Mental Status assessment was inconsistent with the GAF, properly read it is entirely consistent.

This error is significant. Whereas a rating of normality on the mental status examination would have undercut Dr. Ecklund's opinion, and made more justifiable the simultaneous rejection of Dr. Salvan's opinion, the reverse now is true. The two doctors were treating Plaintiff at approximately the same time. They apparently were seeing the same symptoms. Their conclusions were the same. The Administrative Law Judge was wrong to reject the perspective of Dr. Ecklund and, under the circumstances, also therefore was wrong to reject the opinion of Dr. Salvan. Both should have been given more deference; the Administrative Law Judge could, of course, have re-contacted the doctors if either opinion needed fleshing out. When the case returns, the Administrative Law Judge will have that option if he chooses to exercise it.

In accordance with the foregoing, the decision of the Commissioner must be reversed. The matter is remanded to the Commissioner, who shall revisit the decision, giving proper deference to the treating physicians, and otherwise proceeding as appropriate.

IT IS SO ORDERED.

DATED: July 18, 2011

_____
RALPH ZAREFSKY
UNITED STATES MAGISTRATE JUDGE